FILED
IN CLERKS OFFICE

2022 NOV 10  AM 11: United States District Court

District of Massachusetts

U.S. DISTRICT COURT
DISTRICT OF MASS.

Civil Action No. _____

Jerome Tibbs a/k/a Nina Harmony Tibbs,

Plaintiff;

vs.

Gender Dysphoria Group; Wellpath; James S.
Thompson; Joel Andrade; Neil Nordstrom;
Morgan McGinty; Amanda Richards; Elizabeth
Perkins; D.J. Hager; Jane Doe a/k/a Dr. Ginney;
And John Doe,

Defendants.

Verified Civil Action Complaint
With A Jury Demand

I.    Introduction

1.    This is a verified Civil Action Complaint with a jury
demand brought by the Pro Se Plaintiff, Nina Harmony Tibbs, an
incarcerated transgender Woman, against the Gender Dysphoria

Group; Wellpath; James S. Thompson; Joel Andrade; Neil Nordstrom; Morgan McGinty; Amanda Richards, Elizabeth Perkins; D.J. Hager; Dr. Gursey; and John Doe, collectively known as "the defendants."

2.    The Plaintiff, Ms. Tibbs, alleges that the defendants, both by and through their individual efforts, and a concerted conspiracy, acted with a deliberate indifference to Ms. Tibbs' serious medical and mental health needs, subjected Ms. Tibbs to cruel and unusual punishment, and severe and extreme emotional distress and mental anguish when, while acting with improper, and indeed malicious, motives, they took steps to deny Ms. Tibbs a diagnosis of gender dysphoria, refused to treat Ms. Tibbs for gender dysphoria for well over six years, and slander Ms. Tibbs.

3.    The Plaintiff is before this Honorable Court seeking a declaratory judgment; injunctive relief, two hundred fifty Million dollars   ($ 250,000,000.⁰⁰) in monetary damages; and gender Affirming treatment, including, but not limited to Sex Reassignment Surgery.

## II.    Exhaustion of Administrative
## Remedies

4.    Pursuant to G.L. ch. 127, § 38, and 42 U.S.C., § 1997 e(8), Plaintiff has exhausted all available Administrative Remedies.

### III.      Jurisdiction

5.      Plaintiff invokes the jurisdiction of this Honorable Court to hear and Rule in this action pursuant to 42 U.S.C., §§ 1983, 1985, 1988; 12101 et. Seq.; and the First, Eighth and Fourteenth Amendments to the United States Constitution.

6.      Further jurisdiction over Federal questions is invoked pursuant to Title 28 U.S.C., §§ 1331 and 1343, while Supplemental jurisdiction over State law claims is invoked pursuant to Title 28 U.S.C., § 1367.

### IV      Parties

7.      Plaintiff, Jerome Tibbs also known as Nina Harmony Tibbs (hereinafter, "Plaintiff," or "Ms. Tibbs") has a current address of: Souza-Baranowski Correctional Center ("S.B.C.C."); P.O. Box 8000, Shirley, MA 01464.

8.      Defendant, Gender Dysphoria Group ("G.D.G"), which is intended in this action to include the Gender Dysphoria Treatment Committee, and the Gender Dysphoria Clinical Supervision Group, has a current address unknown to Plaintiff. [1]

---

[1]      Defendants McGinty; Richards; and Wellpath Conspired with each other, and other, yet unknown, persons to conceal the identity and/or address

9.  Defendant, Wellpath ("Wellpath") is the Medical/Mental health care provider Contracted by the Massachusetts Department of Correction ("D.O.C.") to provide Medical and Mental health care to Massachusetts State prisoners. Defendant, Wellpath Maintains a business Address of: 16 Chestnut Street, Suite 250, Foxborough, MA 02035.

10.  Defendant, James S. Thompson ("Thompson") is the Chair of the Gender Dysphoria Supervision Group. Defendant, Thompson's Current Address is unknown to Plaintiff.[3/]

11.  Defendant, Joel Andrade ("Andrade") has a last known Address of: 110 Turnpike Road, Suite 308, Westborough, MA 01581[3/]

12.  Defendant, Neil Nordstrom ("Nordstrom") has a Current Address unknown to Plaintiff.[4/]

_____

of this defendant in an effort to hinder and prevent Plaintiff from filing the present Action (Exhibit A)

2/    Id.

3/    Id.

4/    Id.

13.    Defendant, Morgan McGinty ("McGinty") is the Director of Mental health at S.B.C.C., and has a current business address of: Harvard Road, P.O. Box 8000, Shirley, MA 01464.

14.    Defendant, Amanda Richards ("Richards") is the Assistant Director of Mental health at S.B.C.C., with a current business address of: Harvard Road, P.O. Box 8000, Shirley, MA 01464.

15.    Defendant, Elizabeth Perkins ("Perkins") has a last known business address of: Harvard Road, P.O. Box 8000, Shirley, MA 01464. [5]

16.    Defendant, DJ Hager ("Hager") is the former Director of Mental health at S.B.C.C., with a last known business address of: Harvard Road, P.O. Box 8000, Shirley, MA 01464. [6]

17.    Defendant, Jane Doe also known as Dr. Garvey ("Garvey") has a current address unknown to Plaintiff. [7]

---

[5]        Id.

[6]        Id.

[7]        Id.

-5-

18.     Defendant, John Doe ("Doe") is the [8/]
Director of Behavioral Health for the D.O.C., with a Central
business address of: 50 Maple Street, Suite 3, Milford, MA
01757-3698

19.     Each defendant is being sued in her/his
Official and individual/personal Capacities.

### V.     Facts

20.     Ms. Tibbs is a Transgender Woman.

21.     At All times material to this Action, Ms. Tibbs
is incarcerated, in the Care and Custody of the D.O.C.

22.     Defendant WellPath is the Medical provider
Contracted by the D.O.C.

23.     Ms. Tibbs is Classified As suffering from
Serious Mental Illness ("S.M.I.")

24.     On June 10, 2016, while a pretrial detainee,
Ms. Tibbs Arrived At S.B.C.C., And Met with a Mental health
Care Clinician (hereinafter, "The Clinician").

25.     During the June 10, 2016 Meeting with the Clinician,
Ms. Tibbs informed the Clinician, in Material part, that Ms. Tibbs is
a Transgender Woman, and in Need of treatment.

---

8/     Id.

26.    Defendant Perkins was assigned as Plaintiff's Mental health Primary Care Clinician ("P.C.C.").

27.    Plaintiff Repeatedly met with Defendant, Perkins, and Repeatedly Reported to Defendant, Perkins that Ms. Tibbs is a Transgender woman, and in need of treatment.

28.    Pursuant to 103 D.O.C. 652-02: "It is the policy of the [DOC] to appropriately diagnose, treat, and manage inmates with Gender dysphoria .... And ... to provide adequate Medical and Mental health Services to All inmates in its Custody."

29.    Pursuant to 103 D.O.C. 652.03A: "The Role of the Gender Dysphoria Clinical Supervision Group ("G.D.C.S.G.") is to provide orientation and Specialized training to Mental health PCCs ... As they develop Gender Dysphoria – Related Specifications to incorporate into an inmate's individualized Treatment plan for Any inmate who has or May have Gender Dysphoria ...."

30.    Pursuant to 103 D.O.C. 652.05 A, in material part, the PCC shall "Evaluate the inmate to determine whether the inmate meets the Clinical criteria for a provisional diagnosis of Gender Dysphoria. This diagnosis shall be based, in part, upon a Face-to-face Evaluation of the inmate and a Review of the Medical and Mental health history, As well As current Medical Record documentation."

31.    Defendant Perkins never evaluated Ms. Tibbs for the purpose of determining whether Ms. Tibbs meets the Clinical Criteria for a provisional diagnosis.

32.    Defendant Perkins informed Plaintiff that Defendant Perkins knew nothing about a provisional diagnosis, an evaluation, or the Clinical Criteria for Gender Dysphoria.

33.    At no time prior to January 01, 2017 did defendant's G.D.G., Wellpath or Thompson train Defendant Perkins in the area of Gender Dysphoria.

34.    Because defendants G.D.G., Wellpath and Thompson failed to adequately and/or meaningfully train and/or supervise Defendant Perkins, Ms. Tibbs was never evaluated, and never received a provisional diagnosis by Defendant Perkins.

35.    After Defendant Perkins, Plaintiff began to meet with Defendant Hager.

36.    Defendant Hager informed Plaintiff that Defendant Hager was in charge of mental health at S.B.C.C., and a member of the gender committee, and more knowledgeable than Defendant Perkins. About gender identity matters, and thus, better suited for Plaintiff's needs.

37.    Defendant Hager began to ask Plaintiff about Plaintiff's pending criminal charges, and, while uncomfortable about talking about an open case, Plaintiff answered Defendant Hager's questions.

38.     On January 4, 2017, Ms. Tibbs was evaluated by Defendants G.D.G., Andrade, Garvey and Thompson, for approximately one hour.

39.     In the transgender community, there exists a large number of persons, Ms. Tibbs included, who do not believe in needing a doctor's approval/confirmation to be who we are.

40.     During the January 4, 2017 evaluation, Defendants G.D.G., Andrade, Garvey and Thompson asked Ms. Tibbs a number of questions that caused Ms. Tibbs to feel uncomfortable, and left Ms. Tibbs with the feeling that Defendants G.D.G., Andrade, Garvey and Thompson were looking for a way to deny Ms. Tibbs a diagnosis, so as not to have to treat Ms. Tibbs.

41.     In support of her assertion of being a woman, Ms. Tibbs submitted to Defendants G.D.G., Andrade, Garvey and Thompson sworn affidavits from family members and friends, and photographs of Ms. Tibbs prior to Plaintiff's incarceration.

42.     Subsequent to the January 4, 2017 evaluation, Defendants G.D.G., Andrade, Thompson and Garvey denied Ms. Tibbs a diagnosis of Gender Dysphoria, assigning as their reasons, Ms. Tibbs' sexual orientation, alleged inconsistencies, and Defendant G.D.G.'s; Thompson's, Andrade's, and Garvey's false belief that Ms. Tibbs was feigning her symptoms of Gender Dysphoria for a secondary gain or to somehow help Ms. Tibbs benefit in Ms. Tibbs' pending criminal prosecutions. (hereinafter, "Secondary Gain Lie" or "SGL").

43.    Defendants G.D.G., Thompson, Andrade, Garvey and Hager Made up the false Narrative of the Secondary Gain he fully knowing it not to be truthful, and then began to Circulate the S.G.N. by placing it in Ms. Tibbs' Medical files, and telling it to others.

44.    Because Plaintiff did not have a diagnosis of Gender Dysphoria, Ms. Tibbs was not Allowed to purchase and/or wear Make up, bras, panties or hair dye. Ms. Tibbs was Repeatedly strip searched by Male prison guards under the threat that if Ms. Tibbs Refused the strip search, Ms. Tibbs would be sprayed with a Chemical Agent, and physically forced stripped. Ms. Tibbs Received a number of disciplinary Reports and punished for Refusing Cross-gender strip searches, was housed with Male inmates, was sexually harassed and sexually assaulted by Male inmates, had her bra cut from her body, and even criminally prosecuted for An Assault on a prison guard, which derived from a Male prison guard Attempting to strip search Ms. Tibbs.

45.    Acting on Plaintiff's behalf, Prisoners' Legal Services ("P.L.S."), on September 22, 2017, sent a letter to Defendant Andrade pointing out some of the Many flaws in the logic behind the denial of a gender dysphoria diagnosis. (Exhibit B)

46.    In Response to the P.L.S. letter, on November 28, 2017, Defendants G.D.G., Andrade and Thompson visited Plaintiff for approximately twenty (20) Minutes claiming to be Re-Evaluating Ms. Tibbs.

- 10 -

47.    Defendants G.D.G., Andrade and Thompson again denied Ms. Tibbs a diagnosis of Gender Dysphoria.

48.    From June 10, 2016, upto the filing of the Complaint in this Action, Ms. Tibbs has Consistantly and unwaveringly maintained that Ms. Tibbs is a Transgender woman.

49.    Since the Sham of a Re-evaluation in 2017, Defendants G.D.G., Andrade, Thompson, Graney and Hager has never met with Plaintiff again.

50.    In 2018, the Massachusetts legislators enacted General Law Ch. 127, §32A, which reads that:

> A prisoner of a Correctional institution, jail
> or house of Correction that has a gender identity,
> as defined in Section 7 of Chapter 4, that differs
> from the prisoner's sex assigned at birth, with
> or without a diagnosis of gender dysphoria or
> any other physical or mental health diagnosis,
> shall be: (i) addressed in a manner Consistent
> with the prisoner's gender identity; (ii) provided
> with access to Commissary items, clothing,
> programming, educational materials and personal
> property that is Consistent with the prisoner's
> gender identity; (iii) searched by an officer of
> the Same gender identity if the Search requires
> an inmate to remove all clothing or includes a

visual inspection of the anal cavity or genitals; provided, however, that the officer's gender identity shall be consistent with the prisoner's request; and provided further, that such search shall not be conducted for the sole purpose of determining genital status; and (iv) housed in a correctional facility with inmates with the same gender identity; provided further, that the placement shall be consistent with the prisoner's request, unless the Commissioner, the Sheriff or a designee of the Commissioner or Sheriff certifies in writing that the particular placement would not ensure the prisoner's health or safety or that the placement would present management or security problems."

51.     Plaintiff has repeatedly requested/demanded that the DOC comply with §32A, however, because of the S.G.L, the DOC has repeatedly stated that Ms. Tibbs must go through mental health.

52.     Ms. Tibbs has repeatedly requested to be evaluated for a gender dysphoria diagnosis, but Plaintiff has never been evaluated since the 2017 Sham Re-evaluation.

53.     On March 15, 2019, Defendants G.D.G., and Thompson conspired with other, yet unknown, persons to deny Ms. Tibbs a diagnosis of gender dysphoria, without evaluating Ms. Tibbs,

based entirely on the 2016 Secondary Gain Lie. (Exhibit C)

54. These denials of a gender dysphoria diagnosis to Ms. Tibbs continued, without, from 2016, up to and including the date of the filing of the Complaint in this action.

55. Defendant Richards was later assigned as Ms. Tibbs' PCC.

56. By way of Plaintiff being classified as suffering from S.M.I. Defendant Richards was supposed to meet with Plaintiff at least once per week.

57. Defendant Richards met with Ms. Tibbs once per Month, if Ms. Tibbs was lucky.

58. Each time Defendant Richards met with Ms. Tibbs Defendant Richards would make up excuses as to why Defendant Richards failed to meet with Ms. Tibbs once per week.

59. Each time Ms. Tibbs met with Defendant Richards, Plaintiff would inform Defendant Richards that Plaintiff is a Transgender woman in need of treatment, and wish to be evaluated for a diagnosis of gender dysphoria. Ms. Tibbs also gave Defendant Richards a copy of §32A, and asked Defendant Richards to have the D.O.C. comply with §32A so that Ms. Tibbs could feminize.

60. Defendant Richards told Ms. Tibbs that Ms. Tibbs could be meeting with Defendant Richards' boss, Defendant McGinty, who is a member of Defendant G.D.G.

61. Defendant Richards further told Ms. Tibbs that

Defendant Richards could look into, and take care of the 938A
matter.

62. On July 21, 2022, Defendants Richards and McGinty
met with Ms. Tibbs, for approximately one hour, during which time
both Defendant McGinty and Defendant Richards told Ms. Tibbs
that Ms. Tibbs will receive her diagnosis of gender dysphoria,
and that it will be listed as "gender non-conforming."

63. Plaintiff explained that Plaintiff is not gender
non-conforming, but transgender, and Defendant McGinty said
gender non-conforming is how the D.O.C. classifies everybody who
is transgender.

64. Gender Dysphoria and Gender Non-Conforming are
absolutely not the same.

65. To classify one who suffers from Gender
Dysphoria, as Gender non-conforming is an intentional misdiagnosis
and subjects one to the risks of mistreatments.

66. During the July 21, 2022 meeting, Ms. Tibbs
asked Defendant McGinty if Defendant McGinty could get the
D.O.C. to comply with 938A, so that Ms. Tibbs could safely wear
make up and bras, and feminize etc., and Defendant McGinty
and Defendant Richards both said that won't be a problem, and
that they would take care of it.

67. On July 21, 2022, after meeting with Ms. Tibbs,
Defendant McGinty authored a report assessing Ms. Tibbs as being

dysphoric. (<u>Exhibit D</u>)

68. At no time, after the 2017 Sham Re-Evaluation, was Ms. Tibbs ever evaluated.

69. At no time, between July 21, 2022 and the filing of the Complaint in this action, did Defendants G.D.G., Thompson, Andrade or Nordstrom or Garvey ever meet with Ms. Tibbs.

70. After the July 21, 2022 meeting, Defendant Richards began to intentionally avoid Ms. Tibbs.

71. When Defendant Richards finally met with Plaintiff, Defendant Richards informed Ms. Tibbs that Defendants G.D.G., Thompson, Andrade and Nordstrom denied Ms. Tibbs a diagnosis of gender dysphoria, due to their S.G.I.

72. Plaintiff asked Defendant Richards for the names of all persons on the gender dysphoria Committee, so Plaintiff could pursue the matter in Court, and Defendant Richards said she only knew of Defendants Thompson and McGinty, but that Defendant Richards would get Plaintiff the rest of the names.

73. Week after week went by with Defendant Richards Repeatedly telling Ms. Tibbs that Defendant Richards was unable to find out the names.

74. Defendant Richards told Ms. Tibbs that Defendant Richards was told not to give Ms. Tibbs the names of the gender dysphoria Committee Members, and that if Ms. Tibbs wants the names to Sue, that Ms. Tibbs could just Sue the DOC and WellPath,

-15-

but that Defendant Richards would ask Ms. Tibbs not to sue.

75.       When Ms. Tibbs informed Defendant Richards that Plaintiff fully intends to go forward with this matter in Court, Defendant Richards walked away laughing, stating all of their reports and records would be doctored by them.

76.       Ms. Tibbs repeatedly reached out to Defendant McGinty seeking to obtain the names of the gender dysphoria group and a copy of the diagnosis denial, to no avail.

77.       Ms. Tibbs filed a proper grievance seeking the identity of the gender dysphoria committee members, and Defendant Wellpath and its agents and employees elected to withhold the identities from Ms. Tibbs. (Exhibit A)

78.       Ms. Tibbs filed the proper forms seeking to obtain her medical records pertaining to gender dysphoria, and Defendants Wellpath and its employees, including defendants McGinty and Richards elected to withhold the records from Ms. Tibbs.

79.       Ms. Tibbs became so distraught and depressed due to the extended and prolonged denial of a diagnosis and treatment that on October 2, 2022 Ms. Tibbs sliced her arm five times with a razor, in an attempt to kill herself.

80.       Ms. Tibbs further refused to eat, repeatedly urinated on herself and her cell floor, threw food and bled on the cell floor, and Plaintiff's cell became infested with mice.

81.     Ms. Tibbs was left in her cell for approximately five days under these conditions without any medical or mental health treatment.

82.     It was only due to Plaintiff sending out an email alerting friends to her conditions that Ms. Tibbs was "examined" by Medical staff, and photographs were taken of Ms. Tibbs.

83.     Even after Ms. Tibbs injuring herself, Defendant Richards, Plaintiff's P.C.C., continued to avoid Ms. Tibbs

84.     Defendant Richards did not go to see Ms. Tibbs until Friday, October 28, 2022.

85.     Defendants G.D.G.; Wellpath; Thompson; Andrade; Nordstrom; McGinty; Richards; Perkins; Hager; Garvey and Doe's actions and/or emissions caused Ms. Tibbs to suffer severe and extreme physical and emotional/mental injuries resulting in physical symptoms including, but not limited to, headaches; dizziness; vomiting; loss of appitite; loss of weight; insomnia; depression; anxieties; hightened thoughts of suicide; thoughts to hurt and kill others; humiliation; embarrassment; impairment of thoughts; impairment of concentration; nauseousness; scarring on the arm; prolonged imprisonment in the wrong body, and much more.

## VI     Causes of Action

Count I.          42 U.S.C. § 1983 Claim against Defendants
                  G.D.G., Thompson; Andrade, Garvey, Richards,

Hager, McGinty, Nordstrom, Wellpath and
Doe for Deliberate Indifference

86.     The Above Numbered paragraphs 1 through 85 Are
incorporated herein by REFERENCE.

87.     Defendants G.D.G., Wellpath, Thompson, Andrade,
Nordstrom, Hager, Garvey And Doe's Refusal to diagnose Ms. Tibbs'
gender dysphoria, And their Failure/Refusal to treat Ms. Tibbs'
gender dysphoria due to these defendants' Fabricated S.G.L.,
Amounts to these defendants being deliberately indifferent to
Ms. Tibbs' Serious Medical And Mental health Needs.

88.     Defendants G.D.G., Wellpath, Thompson, Andrade,
Nordstrom, Hager, Garvey and Doe's Failure/Refusal to evaluate
Ms. Tibbs, who REPEATEDLY Complained of being A transgender
Woman in Need of treatment, For More than Five years, Amounts to
their being deliberately indifferent to Ms. Tibbs' Serious Medical
and Mental health Needs.

89.     Defendant McGinty's Actions in Assessing Ms.
Tibbs As dysphoric And then Not treating Ms. Tibbs dysphoria
Amounts to a deliberate indifference to Ms. Tibbs' Serious
Medical And Mental health Needs.

90.     Defendant Richards' Actions And/or omissions in
being Plaintiffs' P.C.C. And Fully Knowing that Plaintiff was assessed as being
dysphoric And, yet, Failing to treat the Plaintiff, Amounts to A

deliberate indifference to Ms. Tibbs' serious Medical and Mental health needs

91. Defendant Richards' Actions and/or omissions in being Ms. Tibbs' P.C.C. and fully knowing Ms. Tibbs to suffer from S.M.I., and yet, failing to meet with Ms. Tibbs each week, As required, Amounts to A deliberate indifference to Ms. Tibbs' serious Medical and Mental health needs.

92. Defendants Richards' and McGinty's Actions and/or omissions in failing to ensure that the D.O.C. Complied with G.L. ch. 127, § 32A So that Ms. Tibbs could: purchase and wear Make up, bras and panties; feminize, be addressed by proper pronouns, be searched by and housed with the proper gender of persons, Amounts to their being deliberately indifferent to Ms. Tibbs' serious Medical and Mental health needs.

93. Defendant Richards' Actions and/or omissions in being Ms. Tibbs' P.C.C. and failing/refusing to meet with Ms. Tibbs for weeks after Ms. Tibbs intentionally harmed herself, Amounts to A deliberate indifference to Ms. Tibbs' serious Medical and Mental health needs.

94. Defendant Wellpath's Actions and/or omissions in failing/refusing to treat Ms. Tibbs' self inflicted injuries for approximately five days, was A deliberate indifference to Ms. Tibbs' serious Medical needs.

95. These Act/omissions were taken with deliberate disregard to Ms. Tibbs' wellbeing and Rights.

Count II.                42 U.S.C., § 1983 Claim Against Defendants

                         G.D.G.; Thompson; Andrade; Greavey; Richards,

                         Hager; McGinty; Nordstrom; Wellpath and

                         Doe For Cruel And Unusual Punishment

96.     The Above numbered paragraphs 1 thru 95 Are
incorporated herein by Reference.

97.     Defendants G.D.G, Wellpath, Thompson, Andrade,
Nordstrom, Hager, Greavey and Doe's Refusal/failure to diagnose
and treat Ms. Tibbs' symptoms/Condition, for More than six years,
Allowing Ms. Tibbs' day to day suffering, due to the defendants'
fabricated S.G.L, subjected Ms. Tibbs to Cruel And unusual
punishment.

98.     Defendant McGinty's Actions And/or omissions in
Assessing Ms. Tibbs to being dysphoric, And yet failing/Refusing to
treat Ms. Tibbs And/or ensure that Ms. Tibbs is treated, subjected
Ms. Tibbs to Cruel And unusual punishment.

99.     Defendants McGinty's And Richards' Actions
and/or omissions in Making Sure the D.O.C Complied with § 32A, All
but ensuring that Ms. Tibbs Would: (A) be Strip Searched by MAle
guards (or Assaulted for Refusing), (B) Addressed by MAle pro-
Nouns; (C) housed with MAle prisoners; (D) be prevented from
Wearing MAke up, bras, panties, And (E) be prevented from
feminizing, subjected Ms. Tibbs to Cruel And unusual punishment.

100.     Defendant Richards' actions and/or omissions in failing/refusing to meet with Ms. Tibbs each week, as required, thus allowing Ms. Tibbs to go on suffering each week, untreated, subjected Ms. Tibbs to cruel and unusual punishment.

101.     Defendant Richards, in fully knowing that Ms. Tibbs was assessed as being dysphoric, and failed to treat Ms. Tibbs, subjected Ms. Tibbs to cruel and unusual punishment.

102.     Defendant Wellpath's failure/refusal to treat Ms. Tibbs after Ms. Tibbs' self inflicted injuries, for approximately five days, amounts to cruel and unusual punishment.

103.     Defendants G.D.G., Thomas, Andrade, Ginavey, Hager, Wellpath and Doe's actions in creating the S.G.L., and then circulating the S.G.L. subjected Ms. Tibbs to cruel and unusual punishment.

104.     These defendants' actions and/or omissions were taken with reckless disregard to Ms. Tibbs' constitutional rights.


Count III.                    42 U.S.C. § 1983 Claim against Defendants
                              Wellpath, Richards and McGinty For The
                              Obstruction of Ms. Tibbs' Right To
                              Petition The Court


105.     The above numbered paragraphs 1 through 104 are incorporated herein by reference.

106.    Defendants Wellpath, McGinty and Richards' actions and/or omissions in withholding the identities, and contact information of all members of defendant G.D.G., to hinder Ms. Tibbs' ability to litigate this action in Court, violates Ms. Tibbs' Rights of Access to the Courts to petition for the redress of a grievance.

107.    Defendants Wellpath's actions and/or omissions in withholding Ms. Tibbs' medical records concerning gender identity, in an effort to hinder Ms. Tibbs' ability to meaningfully present Plaintiffs' claims to the Court, violates Ms. Tibbs' Rights of Access to the Courts to petition for the redress of a grievance.

108.    These defendants' actions were taken in reckless disregard to Ms. Tibbs' Constitutional Rights.

Count IV.          42 U.S.C. § 1983 Claim Against Defendants
                   G.D.G., Thompson, Wellpath, Anderson, Lovestrom,
                   Hager, Garvey, Richards, Doe and McGinty
                   <u>For Conspiracy to violate Plaintiffs' Rights</u>

109.    The above numbered paragraphs 1 through 108 are incorporated herein by reference.

110.    Defendants Richards, McGinty and Wellpath each, actively, and knowingly took steps, and entered into an agreement with each other, and with others, yet unknown, individuals to withhold and conceal from Ms. Tibbs, the identity and contact information

of the Gender Dysphoria Committee, and each individual of said Committee, in an effort to frustrate and hinder Ms. Tibbs' efforts to bring the present action, and to prevent Ms. Tibbs from naming and suing the proper persons.

111.    Defendant Wellpath actively took steps, and knowingly entered into an agreement with other, yet unknown, individuals, to withhold and conceal from Ms. Tibbs, the Medical Records/Reports on Ms. Tibbs' gender identity, in an effort to hinder and prevent Ms. Tibbs from presenting Ms. Tibbs' proofs.

112.    Defendants G.D.G., Wellpath, Thompson, Andreades, Groomey, Nordstrom, Hager and Doe each, knowingly reached to mutual understanding and agreement, and acted to undertake a course of conduct that violated Ms. Tibbs' rights secured by the United States Constitution, or the laws of the United States' to wit:

    a.    Make up, create, fabricate the Secondary Gain Lie;

    b.    Use their fabricated Secondary gain lie to ensure that Ms. Tibbs is denied treatment

113.    As a direct and/or proximate result of the conspiracy between the defendants and others, as aforedescribed, Ms. Tibbs suffered severe bodily harm and mental anguish; was denied treatment for more than six years, forcefully strip searched by male person guards, and driven to the brinks of suicide.

114.    These defendants' Actions and/or Omissions were taken in Malice and/or Reckless disregard for Plaintiff's Rights.

Count I.          Claim Against All Defendants for
                  Due Process Violations

115.    The Above Numbered paragraphs 1 through 114 are incorporated herein by Reference.

116.    Defendant Perkins, As indicated in paragraph 30, Above, had An obligation to Evaluate Ms. Tibbs, And failed to do so. Said failure deprived Plaintiff A preliminary diagnosis of gender dysphoria thereby preventing Plaintiff from obtaining treatment for Plaintiff's Condition..

117    Defendants G.D.G., Wellpath And Thompson, As indicated in paragraph 29, Above, had An obligation to provide Orientation And Specialized training to" Defendant Perkins, And failed to do So. Said Failure Resulted in Plaintiff Not being evaluated, diagnosed or treated for Plaintiff's gender dysphoria.

118.    Defendants Wellpath, G.D.G, Thompson, Anderson, Nordstrom, Garvey, Doe, Hager, McGinty and Richards had An obligation to provide, And ensure that Plaintiff is provided with, Adequate And Meaningful Medical and/or Mental health treatment, And failed, first by Creating the S.G.I. So as to Avoid treating Plaintiff; then by Repeatedly failing/Refusing to Evaluate Plaintiff for years, dispite Plaintiff's Repeated

Requests and pleas for treatment, then further by rendering medical determinations without an evaluation, based on old information, and finally by failing/refusing to treat plaintiff, and diagnose plaintiff's condition.

119. These defendants' actions and/or omissions violated Plaintiff's Rights of Due Process, and were taken in willful and reckless disregard for Ms. Tibbs' Rights.

Count III.          Claim Against Defendants G.D.G., Thompson, Andrade, Nordstrom, Hager, Ginivey and Doe for
                    <u>Slander</u>

120. The Above Numbered paragraphs 1 through 119 are incorporated herein by Reference.

121. Defendants G.D.G, Thompson, Andrade, Hager, Ginivey, Nordstrom and Doe Created the S.G.L fully knowing it to be Absolutely false, thereby Causing harm to Ms. Tibbs' Reputation for Truthfulness, And Resulting in Ms. Tibbs Not being Medically treated.

122. The S.G.L Was Created And Circulated with the intent to Cause Ms. Tibbs harm in her Medical Condition and treatment, And such did, infact, Cause Ms. Tibbs harm, And prevented Ms. Tibbs from Obtaining Medical treatment for More than 80 Months.

123. The S.G.L Was Made with Malice.

<u>Count VII</u>.                    Claim Against All Defendants

For Emotional Distress And

<u>Mental Anguish</u>

124.        The Above numbered paragraphs 1 through 123 are incorporated herein by Reference.

125.        Defendant Richards' Refusal/failure to meet with Ms. Tibbs each week, as Required, Caused Ms. Tibbs Severe and extreme emotional distress and Mental Anguish.

126.        Defendants Richards' and McGinty's failure/Refusal to ensure that G.l.ch. 127, § 32A "is Complied with so as to ensure that Ms. Tibbs; Can wear Make up, And bras without having her bras cut off; is Able to feminize; Addressed by proper pronouns, is no longer Strip searched by Male guards, Caused/subjected Ms. Tibbs to Severe and extreme emotional distress And Mental Anguish.

127.        Defendant McGinty's failure to treat Ms. Tibbs' Condition After Assessing Ms. Tibbs As being dysphoric Caused Ms. Tibbs' Severe and extreme emotional distress and Mental Anguish.

128.        Defendants G.D.G, Wellpath, Thompson, Andrade, Garvey, Nordstrom, Hager and Doe's Creating the S.G.L slander then Using it to deny Ms. Tibbs a diagnosis of gender dysphoria, Caused Ms. Tibbs Severe and extreme emotional distress And Mental Anguish.

129        Defendants G.D.G, Thompson, Andrade, Garvey, Hager, Nordstrom And Doe's failure/Refusal to evaluate Ms. Tibbs, subjected

Ms. Tibbs to Severe and Extreme Emotional distress and Mental Anguish.

130.    Defendants G.D.G., Wellpath, Thompson, Lubranski, Garvey, Hagen, Nordstrom and Doe's Refusal/Failure to treat Ms. Tibbs Caused/Subjected Ms. Tibbs to Severe and Extreme Emotional distress and Mental Anguish.

131.    These defendants' actions and/or omissions were taken with reckless disregard for Ms. Tibbs' Rights and wellbeing, and Caused/Subjected Ms. Tibbs to Severe and Extreme Emotional distress and Mental Anguish Resulting in physical Conditions identified in paragraph          , Above, Along with Somatic Undergrowth

⋮

132.    Wherefore, Plaintiff Seeks and Requests this Honorable Court:

a.      Award Plaintiff Compensatory damages against the defendants, and Each of them, jointly and Severally, in the Amount of two hundred fifty Million dollars ($250,000,000.⁰⁰);

b.      Award Plaintiff punitive damages;

c.      Award Plaintiff treble damages;

d. Issue an Order permanently enjoining the defendants, their officers, agents and co-workers from: (i) Addressing and/or referring to the Plaintiff by male pronouns, (ii) identifying Plaintiff as gender non-conforming as opposed to gender dysphoric; (iii) further carrying on with their secondary gains he; (iv) denying, obstructing and/or hindering Plaintiff treatment, including, but not limited to testosterone blockers, estrogen shots (hormone therapy), voice therapy, hair removal, gonad removal, gender reassignment surgery, the ability to purchase and wear make up, panties, bras, and utilize other methods of feminizing; (v) permitting male guards to strep search plaintiff; (vi) housing Plaintiff with male prisoners; and (vii) Showering Plaintiff with male prisoners.

e. award Plaintiff all reasonable costs and Attorneys fees;

f. By way of Memorandum of Decision, issue a declaratory judgment that the defendants, and each of them, violated Plaintiff's Rights

g. Plaintiff's Respectfully demands a trial by jury on All issue's so triable.

By The Plaintiff,

Jerome Tibbs a/k/a Nina H. Tibbs #w-113720

S.B.C.C.

P.O. Box 8000

Shirley, MA 01464

November 03, 2022

Certificate of Verification

I hereby Certify that I have read the foregoing Complaints, and have personal knowledge of the same, and swear that all factual assertions therein are true and factual to the best of My Knowledge, understanding and information, Made in good faith to see Justice done, and without Malice.

Nina Harmony Tibbs