UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JEROME TIBBS, a/k/a ) <br> NINA HARMONY TIBBS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GENDER DYSPHORIA GROUP, et al., ) <br> ) <br> Defendants. ) | Civil Action No. <br> 22-11849-FDS |

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTIONS TO DISMISS

**SAYLOR, C.J.**

This is an action by a state prisoner alleging violations of her civil rights. Plaintiff Jerome Tibbs, also known as Nina Harmony Tibbs, is serving a prison sentence at Souza-Baranowski Correctional Center in Shirley, Massachusetts. She has brought a *pro se* complaint against several prison officials under 42 U.S.C. § 1983 and Massachusetts tort law, contending that they "took steps to deny [her] a diagnosis of gender dysphoria" and "refused to treat [her] for gender dysphoria for well over six years." (Compl. ¶ 2).

Defendants Joel Andrade, Donald "DJ" Hanger, and Elizabeth Perkins have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(5) for failure to effect proper service and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motions will be granted.

**I.     Background**

    **A.     Factual Background**

The facts are set forth as alleged in the complaint.

Jerome Tibbs, also known as Nina Harmony Tibbs, is an inmate at Souza-Baranowski Correctional Center in Shirley, Massachusetts. (Compl. ¶ 7).[1] According to the complaint, Tibbs identifies as a transgender woman. (*Id.* ¶ 20).[2]

On June 10, 2016, while in pretrial detention, Tibbs met with a mental-health clinician and informed the clinician of her transgender identity and "need of treatment." (*Id.* ¶ 24-25). As a result of that meeting, Elizabeth Perkins was assigned to be the "mental health primary care clinician" for Tibbs. (*Id.* ¶ 26). According to the complaint, over the course of several meetings with Perkins, Tibbs reiterated her status as a transgender woman and her need for treatment in accordance with Department of Corrections policies. (*Id.* ¶ 27-30). Perkins allegedly did not evaluate Tibbs to determine whether she met the clinical criteria for a diagnosis of gender dysphoria, and instead "informed [Tibbs] that [] Perkins knew nothing about a provisional diagnosis, an evaluation, or the clinical criteria for gender dysphoria." (*Id.* ¶ 31-32).

Tibbs subsequently began to meet with defendant Donald "DJ" Hager. (*Id.* ¶ 35). According to the complaint, he "informed plaintiff that [he] was in charge of mental health at [Souza-Baranowski], and a member of the gender committee, and more knowledgeable than defendant Perkins about gender identity matters, and thus, better suited for plaintiff's needs." (*Id.* ¶ 36).

On January 4, 2017, Tibbs was evaluated by Gender Dysphoria Group, Joel Andrade, Jane Doe a/k/a Dr. Garvey, and James S. Thompson. (*Id.* ¶ 38). Following that evaluation, Tibbs did not receive a diagnosis of gender dysphoria. (*Id.* ¶ 42). The complaint alleges that in support of that decision, the report cited "Ms. Tibbs's sexual orientation, alleged inconsistencies,

---

[1] Based on publicly-available information, Tibbs is presently serving a prison sentence of 8 to 10 years for rape of a child pursuant to Mass. Gen. Laws ch. 265, § 23.

[2] The Court will use female pronouns to refer to Tibbs in this memorandum.

and . . . [their] belief that Ms. Tibbs was feigning her symptoms of gender dysphoria for a secondary gain." (*Id.* ¶ 42). According to the complaint, because Tibbs did not receive a diagnosis of gender dysphoria, she was "not allowed to purchase and/or wear makeup, bras, panties or hair dye." (*Id.* ¶ 44). She was also "repeatedly strip searched by male prison guards under the threat that if [she] refused the strip search, [she] would be sprayed with a chemical agent, and physically forced stripped." (*Id.*). Furthermore, she was "housed with male inmates," "sexually harassed and sexually assaulted by male inmates," and "had her bra cut from her body." (*Id.*).

On September 22, 2017, Prisoners' Legal Services sent a letter to Andrade on Tibbs's behalf disputing the denial of a gender dysphoria diagnosis and requesting reconsideration of that decision. (*Id.* ¶ 45). In response to the letter, Andrade and Thompson reevaluated Tibbs on November 28, 2017. (*Id.* ¶ 46). According to the complaint, they "again denied" a diagnosis of gender dysphoria. (*Id.* ¶ 47). Following that evaluation, according to the complaint, Adrade, Thompson, Garvey, and Hager "never met with plaintiff again." (*Id.* ¶ 49).

From 2017 through 2022, Tibbs allegedly "consistently and unwaveringly maintained" her status as a transgender woman and "repeatedly requested to be evaluated for a gender dysphoria diagnosis." (*Id.* ¶¶ 48, 52). Ultimately, on July 21, 2022, defendant Morgan McGinty "authored a report assessing [plaintiff] as being dysphoric" and approved her request to "feminize." (*Id.* ¶¶ 66-67).

**B.     Procedural Background**

On November 10, 2022, plaintiff filed a complaint against defendants Gender Dysphoria Group, Wellpath, Joel Andrade, Jane Doe (also known as Dr. Garvey), John Doe, Donald "DJ" Hanger, Morgan McGinty, Neil Nordstrom, Amanda Richards, Elizabeth Perkins, and James S. Thompson. The complaint alleges (1) a claim under 42 U.S.C. § 1983 for deliberate indifference

against all defendants except Perkins; (2) a claim under 42 U.S.C. § 1983 for cruel and unusual punishment against all defendants except Perkins; (3) a claim under 42 U.S.C. § 1983 for obstruction of plaintiff's right to petition the court against defendants Wellpath, McGinty, and Richards; (4) a claim under 42 U.S.C. § 1983 for conspiracy to violate plaintiff's rights against all defendants except Perkins; (5) a claim under 42 U.S.C. § 1983 for due-process violations against all defendants; (6) a claim for slander against defendants Gender Dysphoria Group, Andrade, Jane Doe, John Doe, Hanger, Nordstrom, and Thompson; and (7) a claim for emotional distress and mental anguish against all defendants. Plaintiff seeks a declaratory judgment, injunctive relief, $250 million in damages, and "gender affirming treatment, including, but not limited to sex reassignment surgery." (Compl. ¶ 3).

Defendants Andrade, Hanger, and Perkins have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(5) for failure to effect proper service. Defendants have also moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff has not filed an opposition to those motions.

**II.     Standard of Review**

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding*

4

*Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

Because plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *see also Instituto De Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). Where the court cannot ascertain the nature and basis of any legitimate claims, however, it is under no obligation to rewrite the pleadings on their behalf. *See Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 Fed. Appx. 274, 276-277 (11th Cir. 2008) ("While a trial judge is to employ less stringent standards in assessing *pro se* pleadings than would be used to judge the final product of lawyers, this leniency does not permit the district court to act as counsel for a party or to rewrite deficient pleadings.").

### III.     Analysis

#### A.     Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5)

Defendants Andrade, Hanger, and Perkins have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(5) for failure to effect proper service.

Before a federal court may exercise personal jurisdiction over a defendant, proper service of process must be effected. *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Under Fed. R. Civ. P. 4(e), there are four ways by which to serve an individual defendant within a federal judicial district: (1) by following the requirements of state law for

serving a summons in actions brought in the courts of general jurisdiction in the state where the district court is located or where service is made (here, Massachusetts); (2) by delivering a copy of the summons and the complaint to the individual personally; (3) by leaving copies of those items at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (4) by delivering copies to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e).

The Massachusetts rules for service are substantially similar to the federal rules. Service can be made upon an individual by "delivering a copy of the complaint to him personally; or by leaving copies thereof at his last and usual place of abode; or by delivering copy of the summons and of the complaint to an agent authorized by appointment or by statute to receive service of process . . . ." Mass. R. Civ. P. 4(d)(1).

Under the federal rules, service of process must take place within 120 days after the complaint is filed, or the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If the plaintiff shows good cause, then "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). The court, in its discretion, may also grant an extension of time even absent good cause. Fed. R. Civ. P. 4 Advisory Committee's Note (1993).

When the sufficiency of process is challenged under Rule 12(b)(5), the plaintiff bears "the burden of proving proper service." *Rivera-Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992). A return of service "generally serves as prima facie evidence that service was validly performed," but a defendant may adduce "rebuttal evidence to refute any presumption of valid service." *Blair v. City of Worcester*, 522 F.3d 105, 111-12 (1st Cir. 2008).

Plaintiff filed the complaint on November 10, 2022. By order dated May 2, 2023, she

was granted 90 days from that date to complete service—that is, until July 31, 2023. The proofs of service filed with the court indicate that for several defendants, including Andrade, Hanger, and Perkins, plaintiff served the summons "by certified mail." (ECF No. 15-17). Service of process cannot be effectuated by certified mail and must comply with the specific requirements outlined in Fed. R. Civ. P. 4(e). Furthermore, it is clear that plaintiff has not met her burden of proving timely and proper service of process. Accordingly, the Court will grant the motions of defendants Andrade, Hanger, and Perkins to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(5) for failure to effect proper service.[3]

### B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Defendants Andrade, Hanger, and Perkins have also moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, contending that plaintiff's claims were brought outside of the relevant limitation periods.

Under Massachusetts law, the general limitations period for tort claims is three years after the date of accrual. Mass. Gen. Laws ch. 260, § 2A ("Except as otherwise provided, actions of tort . . . shall be commenced only within three years next after the cause of action accrues."). Under 42 U.S.C. § 1983, the limitations period is "borrow[ed]" from the "forum state's statute of limitations for personal-injury actions." *Álamo-Hornedo v. Puig*, 745 F.3d 578, 580 (1st Cir. 2014). Therefore, in Massachusetts, Section 1983 claims are subject to a three-year limitations period. *See* Mass. Gen. Laws ch. 260, § 2A.

Unlike the limitations period, the date of accrual is governed by either federal or state law, depending on the nature of the claim. Both federal and state law, however, employ a similar discovery rule; in substance, both provide that a claim does not accrue until a plaintiff knows or

---

[3] For the reasons set forth below, the claims against Andrade, Hanger, and Perkins will also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

reasonably should know of both their injury and its causal connection to a defendant.

For the federal claims, the date of accrual is determined by federal law. *Ouellette v. Beaupre*, 977 F.3d 127, 135 (1st Cir. 2020). "[A] § 1983 claim will accrue once a plaintiff is armed with the necessary factual predicate to file suit, including knowledge of both an injury and the injury's likely causal connection with the putative defendant." *Id.* at 139. Nonetheless, in some cases, "the injury may be apparent, but 'the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain.'" *Id.* (quoting *Jardin De Las Catalinas Ltd. v. Joyner*, 766 F.3d 127, 133 (1st Cir. 2014)). Under those circumstances, the "federal discovery rule" delays accrual until "a reasonably prudent person similarly situated to the plaintiff would discover . . . the existence of the injury and its probable cause." *Id.*

However, if the available information would be sufficient to at least give rise to a suspicion of a claim, a prospective plaintiff has "a duty to investigate or inquire further regarding his or her injury and the party responsible for causing it." *Ouellette*, 977 F.3d at 137. "A claim will accrue at the point during an investigation when a plaintiff, acting diligently, obtained or would have obtained enough factual information about his or her injury and its cause to file suit against a defendant." *Id.* at 138.

For the state-law claims, "a tort cause of action accrues either when the plaintiff is injured as a result of the defendant's unlawful act or omission, or, if the wrong is inherently unknowable, when the plaintiff knows or should know that she has been injured." *Pagliuca v. City of Boston*, 35 Mass. App. Ct. 820, 824 (1994) (citations and quotations omitted). A plaintiff need not have "notice of every fact which must eventually be proved in support of the claim," but must have "knowledge that an injury has occurred." *Id.*

Here, it is clear that the complaint was filed long after the applicable three-year limitations period had expired. Plaintiff alleges that she first had contact with defendant Perkins on June 10, 2016. Her final contact with Perkins occurred at some point before January 1, 2017. The complaint alleges that throughout that period, Perkins failed to determine whether plaintiff met the clinical criteria for a diagnosis of gender dysphoria. Accordingly, plaintiff should have reasonably known of her alleged injury as a result of Perkins' failure to evaluate her for gender dysphoria, at the latest, by January 1, 2017. Because she filed the complaint in this action nearly six years later on November 10, 2022, her claims against Perkins are time-barred.

Similarly, plaintiff alleges that she was evaluated by defendants Hanger and Andrade for the first time on January 4, 2017. Following that evaluation, plaintiff did not receive a diagnosis of gender dysphoria. On September 22, 2017, Prisoners' Legal Services sent a letter to Andrade on plaintiff's behalf. On November 28, 2017, Andrade and Thompson reevaluated plaintiff and again did not diagnosis gender dysphoria. Accordingly, plaintiff knew of her alleged injury as a result of defendants' alleged failure to diagnosis her for gender dysphoria, at the latest, by September 2017. Because plaintiff filed the complaint in this action more than five years later, her claims against Hanger and Andrade are time-barred.

Moreover, the complaint does not plead any facts that would even arguably toll the applicable limitations period. Prisoners are required, pursuant to the Prison Litigation Reform Act ("PLRA"), to exhaust all available administrative remedies prior to bringing suit. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 739–41 (2001). The rule applies to all levels of the prison grievance process, including any optional appeals. *See Johnson v. Thyng*, 369 Fed. App'x 144, 147–48 (1st Cir.2010). In accordance with that requirement, some courts have held that "a plaintiff is entitled to equitable tolling of the statute of limitations for time spent exhausting

administrative remedies." *Dillon v. Dickhaut*, No. 12–10713, 2013 WL 2304175, at *4 (D. Mass. May 24, 2013); *Gonzalez v. Hasty*, 651 F.3d 318, 323–24 (2d Cir.2011); *Brown v. Valoff*, 422 F.3d 926, 942–43 (9th Cir. 2005); *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2011); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000); *Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999). The purpose of that tolling doctrine is to avoid putting prisoners in a "catch–22" wherein "the prisoner who files suit . . . prior to exhausting administrative remedies [would] risk[ ] dismissal based upon § 1997e; whereas the prisoner who waits to exhaust his administrative remedies [would] risk[ ] dismissal based upon untimeliness." *Johnson*, 272 F.3d at 522. "Furthermore, any other interpretation of the PLRA could 'permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" *Gonzalez*, 651 F.3d 318 at 323 (quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

As noted, the complaint here does not allege that plaintiff pursued any administrative remedies through the prison system that would toll the applicable limitations period. The grievance forms attached to the complaint were filed in September 2022, at least three years after the limitations period for all of plaintiff's claims would have expired. (Compl. Exhibit A). Therefore, the claims against defendants Andrade, Hanger, and Perkins are untimely and will be dismissed.

**IV.     Conclusion**

For the foregoing reasons, the motion of defendants Joel Andrade and Donald "DJ" Hanger to dismiss for failure to state a claim upon which relief can be granted and for insufficient service of process (ECF No. 28), and the motion of Elizabeth Perkins to dismiss, also for failure to state a claim upon which relief can be granted and for insufficient service of process, (ECF No. 31), are GRANTED.

**So Ordered.**

                                                      /s/ F. Dennis Saylor IV
                                                      F. Dennis Saylor IV
Dated: April 24, 2024                              Chief Judge, United States District Court